Carmela **MARES**, Plaintiff–Appellant,

v.

**CONAGRA POULTRY COMPANY, INC., Defendant–Appellee.**

No. 91–1288.

United States Court of Appeals, Tenth Circuit.

July 17, 1992.

---

tion and dismissed all of Mares' claims. *Mares v. ConAgra Poultry Company, Inc.*, 773 F.Supp. 248 (D.Colo.1991). Mares appeals only from that portion of the district court's order dismissing Count V, the state-law claim for invasion of privacy. Mares also has moved to certify a question concerning the scope of Colorado invasion of privacy law in the private employment context. *See* 10th Cir.R. 27.1; Colo.App.R. 21.1. Our jurisdiction arises under 28 U.S.C. § 1291. We decline to certify the question to the Colorado Supreme Court and affirm the judgment of the federal district court.

Gilbert M. Roman (Darold W. Killmer, with him on the brief), of Feiger, Collison & Killmer, Denver, Colo., for plaintiff-appellant.

Judith A. Biggs (John M. Husband, with her on the brief), of Holland & Hart, Denver, Colo., for defendant-appellee.

Before TACHA and KELLY, Circuit Judges, and CONWAY, District Judge.[†]

PAUL KELLY, Jr., Circuit Judge.

Plaintiff–Appellant, Carmela Mares (Mares), filed this action, which was removed to federal district court, requesting actual, compensatory and punitive damages against Defendant–Appellee, ConAgra Poultry Company, Inc. (ConAgra) for wrongfully terminating her employment following her refusal to fill out a form dealing with drug usage. Mares pled several alternate theories, including invasion of privacy, to recover for her alleged wrongful discharge.[1] The district court granted ConAgra's summary judgment mo-

## Background

ConAgra, in implementing its drug testing policy, required that each employee complete a "Prescription Drugs and Over-the-Counter Medication Form." The form requested disclosure of the following information: (1) names of any drugs or medications utilized, (2) dosages, (3) name(s) of prescribing physician, (4) nature of illness for which such drug was being taken, (5) any expected side effects from the use of such drug, (6) the length of time the employee expected to be taking the drug or medication, and (7) the name of any attending physician if different from the prescribing physician. The form also authorized the employee's physician to release information to ConAgra concerning use of any disclosed medication. The form was marked "confidential" and was to be retained in a file cabinet under lock and key, according to an affidavit supporting ConAgra's summary judgment motion. Another affidavit submitted by ConAgra indicated that the purpose of the form was "to assure the accuracy of drug test results and

[†] The Honorable John E. Conway, United States District Judge for the District of New Mexico, sitting by designation.

1. Mares' second amended complaint provides in pertinent part:
 NATURE OF THE ACTION
 This is an action under Colorado law for compensatory and punitive damages resulting from Defendant's wrongful discharge of Plaintiff as a result of violation of public policy, outrageous conduct, and intentional infliction

of emotional distress, invasion of privacy and violation of rights secured by the U.S. Constitution.

. . . .

FIFTH CLAIM FOR RELIEF

. . . .

20. Defendant's insistence that Plaintiff sign a consent to the release of confidential and privileged information and her subsequent termination due to her failure to comply is an invasion of Plaintiff's privacy rights.

to provide employees with an opportunity to explain a positive test result." Mares, who stated that she did not object to drug testing per se, refused to complete the form or to submit to a drug test. When she declined to reconsider her refusal, she was terminated.

### Discussion

Mares appeals from the grant of summary judgment. Our review is de novo and we apply the same legal standard used by the district court in evaluating the summary judgment motion, namely Fed. R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

Concerning the burden of proof, a movant need only point to those portions of the record which demonstrate an absence of a genuine issue of material fact given the relevant substantive law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Where, as here, the nonmoving party will bear the burden of proof at trial, "Rule 56(e) ... [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553 (quoting Fed. R.Civ.P. 56(e)). If a movant establishes entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. *See Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511. There simply is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

Concerning the quantum of proof attendant to summary judgment, it is the same as that required for a directed verdict in the case. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. "[W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252, 106 S.Ct. at 2512. Thus, in the normal civil case, a judge must ask, based on the record and after considering who has the burden of proof, "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.*[2]

---

**2.** The dissent's apparent misunderstanding of these burdens "has an obvious and critical impact on its assessment of this record." *Brown v. Board of Educ.*, 892 F.2d 851, 863 n. 27 (10th Cir.1989), *vacated,* —— U.S. ——, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992). The dissent contends that ConAgra never met its initial burden of showing that it was entitled to summary judgment because "ConAgra's stated justification does not eliminate all genuine issues of material fact." Dissent at 498. As *Celotex* makes abundantly clear, ConAgra could (and did) meet its initial burden handily by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Mares at all times bears the burden of proving that the medical form at issue constitutes an invasion of privacy in the workplace, and specifically, a highly offensive intrusion upon seclusion.

The dissent contends in the alternative that, even if ConAgra met its initial summary judgment burden, ConAgra has a responsibility to provide further justification of "the arguably more intrusive requirements" on the form concerning disclosure of illnesses and authorization to contact an employee's physician. Dissent at 498. ConAgra's desire to protect the integrity of its drug testing by such measures is reasonable on its face, but more importantly, the dissent's focus on perceived deficiencies in ConAgra's proof flies in the face of *Celotex*—ConAgra was

"In reviewing the grant of summary judgment in a suit based on diversity jurisdiction, we apply the law of the forum." *Skidmore, Owings & Merrill v. Canada Life Assurance Co.*, 907 F.2d 1026, 1027 (10th Cir.1990). Thus, Colorado provides the substantive law to be applied. We "review *de novo* a district court's determination of state law." *Salve Regina College v. Russell*, — U.S. —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

 Colorado is an "at will employment" jurisdiction. *See Continental Airlines v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). *See also Freidman & Son, Inc. v. Safeway Stores*, 712 P.2d 1128, 1131 (Colo. App.1985). That is, in the absence of an employment agreement, either the employer or the employee can terminate the employment relationship at will. *Justice v. Stanley Aviation Corp.*, 35 Colo.App. 1, 530 P.2d 984, 986 (1974). The presumption of an at will employment relationship is not absolute, however, and there may be situations where discharge may be wrongful and thus actionable. *See, e.g., Continental Airlines*, 731 P.2d at 711–12 (employee may be able to enforce termination procedure in an employee manual either on a bilateral contract or promissory estoppel theory); *Cronk v. Intermountain Rural Elec. Coop.*, 765 P.2d 619 (Colo.App.1988) (if discharge resulted from employee's exercising a specifically enacted right or duty, the general "at will" rule does not apply). But under the facts of this case,

Mares has not cited, nor has our research disclosed, any authority which would suggest that Colorado would create an exception to the employment at will doctrine based on an employer's mere request for medical information pursuant to a drug testing policy.

Mares argues that Colorado search and seizure decisions evidence the fact that the Colorado courts are inclined toward broader search and seizure protection than the United States Supreme Court. *See, e.g., People v. Hillman*, 821 P.2d 884 (Colo.App. 1991) (under Colorado Constitution, garbage placed for curbside collection may be the subject of a reasonable expectation of privacy), *cert. granted,* (Colo. Jan. 13, 1992); *People v. Oates*, 698 P.2d 811 (Colo. 1985) (under Colorado Constitution, beeper placed inside a drum of chemicals constitutes a search). Yet, Mares concedes that the search and seizure decisions of the Colorado Supreme Court, or for that matter, of the United States Supreme Court, are not applicable in the absence of any state action. It is uncontroverted that ConAgra is a private employer.

The latest case on which Mares relies, *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo.1992), reiterates that Colorado adheres to the "at will employment" doctrine, subject to a public policy exception. In that case, the plaintiff alleged that he was terminated for refusing to communicate false and misleading statements to the

---

not required to produce evidence *negating* Mares's claim of invasion of privacy.

According to the dissent, the medical form should be sufficient to withstand summary judgment. The dissent criticizes the fact that we "do[ ] not explain what type of evidence Mares possibly could produce" in addition to the form. Dissent at 3. We leave such strategy decisions to the attorneys and are confident that they are up to the task. The form neither refutes the stated justification nor does it establish that the information sought would be highly offensive to a reasonable person who had no objection to drug testing (like Mares), essential prerequisites to Mares proving her case under the *Restatement.*

The dissent's final justification, that we "incorrectly shift[ ] the burden of producing summary judgment evidence to Mares" and "effectively foreclose[ ] the availability of the intru-

sion upon seclusion form of the invasion of privacy tort in Colorado" Dissent at 472–98, 500, is far off the mark. As noted above, Mares has the burden of proving her case; ConAgra should not be forced to disprove it. And while the legal issues in this case are interesting, we see no need to add to the Colorado Supreme Court's workload by seeking an advisory opinion when the case can (and should) be resolved on federal summary judgment principles, with all due care taken to disclaim any opinion on the state law privacy issues. Moreover, we think that ConAgra has a substantial interest in a prompt resolution of the case in this forum. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553 (footnote omitted).

government on behalf of his private employer. The Colorado Supreme Court held that a claim for wrongful discharge under the public policy exception to the at will employment doctrine is cognizable in Colorado and that, in order to withstand a directed verdict on a claim for wrongful discharge based on an employee's refusal to perform an illegal act, the employee must establish, in addition to the elements outlined in *Cronk*, that the employer had actual or constructive knowledge that the employee's refusal to perform the was act based on the employee's reasonable belief that the act directed by the employer was unlawful. *Lorenz*, 823 P.2d at 102. As noted above, Mares never contended that she was being asked to perform an illegal act and stresses that she is not complaining about the drug testing. In fact, she would have submitted to the drug tests, but for the form. Thus, her objection focuses *entirely* on the form she was asked to complete.

■ Mares contends that ConAgra's request for medication information constitutes an invasion of privacy, a tort recognized in Colorado. *See Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 755 (1970); *Wells v. Premier Indus. Corp.*, 691 P.2d 765, 768 (Colo.App.1984); *Restatement (Second) of Torts* § 652A(2). Mares contends that the Colorado Supreme Court has established its own elements for the invasion of privacy and would not adopt the *Restatement* approach. *See* Aplt. Reply Brief at 12. According to Mares, under *Rugg v. McCarty*, she should prevail on her invasion of privacy claim because ConAgra's request for medical information (1) is unreasonable, (2) will cause extreme mental anguish, embarrassment and humiliation and (3) constitutes oppressive conduct and intimidation. Aplt. Brief at 13 (citing *Rugg v. McCarty*, 476 P.2d at 755–56). The information sought by ConAgra,

while seemingly straightforward, is termed by Mares as "substantially intrusive" and "similar to placing a listening device in a bedroom."

We believe that Mares overstates what is being requested. As recognized by the Supreme Court, absent some allegation (not here present) that information gleaned from a medication information form is being disseminated or published, any invasion is at best insignificant. *Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 626, 109 S.Ct. 1402, 1418 n. 7, 103 L.Ed.2d 639 (1989) (citing *Whalen v. Roe*, 429 U.S. 589, 602, 97 S.Ct. 869, 877, 51 L.Ed.2d 64 (1977)). While *Skinner* involved a Fourth Amendment claim, the Court's conclusion regarding the nature of the "medical form invasion" is telling. In the absence of any evidence suggesting anything other than the complete confidentiality of the information requested, we hold as a matter of law that the suggested intrusion is insignificant.[3]

We recognize that the absence of public disclosure does not preclude an action for intrusion upon seclusion under § 652B of the *Restatement (Second) of Torts. Id.* comment a. Assuming, without deciding, that Colorado would recognize such a tort as part of its invasion of privacy law, Mares had the burden to prove that the form constituted a *substantial* interference with her seclusion, one which is "highly offensive to a reasonable person" and "to which the reasonable man would strongly object." *Id.* § 652B & comment d. Mares did not carry her burden. ConAgra offered legitimate reasons for requiring employees to complete the form, such as protecting employees from false positives and maintaining the integrity of its drug testing. Although Mares contends that "the proffered explanation by ConAgra is insufficient to demonstrate a need for Mares' private medical information," the burden was on Mares to come forward with sum-

---

**3.** It is uncontroverted that Conagra never publicized information concerning Mares and did not disclose requested medical information. Thus, cases cited by Mares which involve disclosure of private medical information by third parties have no applicability. Cases cited by Mares within this category include *Bratt v. I.B.M. Corp.*, 785 F.2d 352 (1st Cir.1986); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3rd Cir.1980); *Doe v. Borough of Barrington*, 729 F.Supp. 376 (D.N.J.1990); *Cronan v. New England Telephone*, 1 IER Cases 658 (D.Mass. 1986).

mary judgment evidence (not mere statements of counsel) refuting the justification, thereby supporting Mares' assertion that the request for medical information prior to drug testing was unreasonable and an intrusion on seclusion. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Mares cannot avoid summary judgment merely by characterizing ConAgra's request as "oppressive conduct and intimidation" because it is a condition of employment or "unreasonable because there is no legitimate need for an employer to know the illnesses and medications of its employees." *See* Aplt. Brief at 13.

Although Mares argues a need to balance the interests of the parties, and suggests that a genuine issue of material fact exists concerning whether an invasion of privacy occurred, she has not come forward with any evidence to controvert the undisputed material facts as set forth in ConAgra's motion and affidavits. Consequently, there is nothing to "balance." Only factual disputes about material matters are relevant to a summary judgment determination. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. No material fact in dispute having been brought to the attention of either the district court or the appellate court, the judgment of the district court is AFFIRMED and the motion to certify a question of state law to the Colorado Supreme Court is DENIED.

TACHA, Circuit Judge, dissenting:

The majority, with little or no guidance from the courts of Colorado, decides an important question of Colorado law and implicitly forecloses a theory of tort recovery yet to be addressed by the Supreme Court of Colorado. Therefore, I respectfully dissent.

The central issue raised by this appeal is not related to the Colorado at-will employment doctrine. In her complaint, appellant Carmela Mares alleged six claims for relief, including a claim for "violation of public policy" and a separate claim for "invasion of privacy." The violation-of-public-policy claim essentially asserts a wrongful discharge that allegedly meets Colorado's public policy exception to the doctrine of at-will employment.[1] In a separate claim for relief, Mares asserts a cause of action for the common law tort of invasion of privacy.[2] The district court granted defendant's summary judgment motion on all of Mares' claims.

On appeal, Mares contends *only* that the district court erred in granting summary judgment with respect to her invasion of privacy claim. She does not appeal from the grant of summary judgment on her claim for wrongful discharge in violation of public policy. The narrow issue raised on this appeal is whether, when inferences are drawn in favor of appellant Carmela Mares, the evidence presented by both parties presents a genuine issue as to any material fact so that the invasion of privacy issue should be submitted to a jury.

In addressing the specific summary judgment issue raised on appeal, the majority concludes that Mares has failed to carry her summary judgment burden. I disagree. When I assume without deciding—as does the majority—that Colorado would recognize a cause of action for the "intrusion upon seclusion" form of the invasion of privacy tort described in *Restatement (Second) of Torts* § 652B, I cannot agree that Mares must come forward with additional evidence, in addition to the medications form that she was required to complete, in order to prevent the entry of summary judgment. In our circuit, " '[t]he

1. The complaint's second claim for relief, entitled "Violation of Public Policy," states that
 [i]n acting as alleged herein Defendant discharged Plaintiff without just cause and in violation of fundamental public policies of the State of Colorado, in the following respects, among others by requiring Plaintiff to divulge information covered under doctor patient privilege as a condition of her continued employment in violation of C.R.S. 13–90–107(d).

2. Mares' fifth claim for relief, entitled "Invasion of Privacy," alleges that
 Defendant's insistence that Plaintiff sign a consent to the release of confidential and privileged information and her subsequent termination due to her failure to comply is an invasion of Plaintiff's privacy rights.

moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.'" *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991) (quoting *Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir.1987)). When the "moving party has met its burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). ConAgra never met its initial burden of showing that it was entitled to a judgment as a matter of law.

ConAgra submitted an affidavit stating that the purpose of the medications form was to ensure the accuracy of the drug test and to allow employees to explain positive test results. Although Mares presented no evidence to rebut this explanation, Mares contends—and I agree—that ConAgra's stated justification does not eliminate all genuine issues of material fact. The majority mandates that Mares produce evidence to refute ConAgra's justification and that the rebuttal consist of more than "mere statements of counsel." Maj. op. at 497. The majority does not explain what type of evidence Mares possibly could produce. Indeed, it is unlikely that Mares could present any evidence other than the powerful evidence she already produced—the medications form itself.

Perhaps ConAgra, by submitting the affidavit, offered legitimate reasons for requesting a list of medications that employees are currently taking. However, ConAgra's proffered evidence did not even attempt to justify the arguably more intrusive requirements imposed by ConAgra on the medications form—namely, disclosure of the nature of the employee's illnesses

and authorization for release of information from the employee's physician regarding the employee's use of medications. Therefore, even if I assume that ConAgra met its initial summary judgment burden with respect to the disclosure of medications requirement, I cannot conclude that ConAgra has sufficiently justified all of the requirements on the medications form so as to be entitled to a judgment as a matter of law.

Finally, I cannot agree with the majority's determination that "[i]n the absence of any evidence suggesting anything other than the complete confidentiality of the information requested, ... as a matter of law ... the suggested intrusion is insignificant." Maj. op. at 496. Because this is a diversity case, when the majority affirms the grant of summary judgment "as a matter of law," it necessarily bases its decision on the law of the forum—in this case Colorado. It is far from clear that the Supreme Court of Colorado would conclude that Mares has failed to state, and support, a cause of action for invasion of privacy.[3] The crucial inquiry in an invasion of privacy claim is what a reasonable person finds objectionable. By deciding that the form itself is not sufficient evidence to create a genuine issue as to whether the form was unreasonable, the majority effectively forecloses the availability of the intrusion upon seclusion form of the invasion of privacy tort in Colorado.

To produce additional evidence, Mares can only assert that the form itself is intrusive and offensive to a reasonable person. Such assertions necessarily are legal arguments. Mares simply cannot supply additional factual evidence on what constitutes

---

**3.** In one paragraph the majority concludes that "*[i]n the absence of any evidence suggesting anything other than the complete confidentiality of the information requested,* we hold as a matter of law that the suggested intrusion is insignificant," Maj. op. at 496 (emphasis added); then, in the next paragraph, the majority "recognize[s] that the absence of public disclosure does not preclude an action for intrusion upon seclusion under § 652B of the *Restatement (Second) of Torts*." *Id.* Clearly, under § 652B, the publicity or publication of a person's private affairs is not relevant to whether a significant

intrusion occurs. *Id.* § 652B cmt. a. (the intrusion upon seclusion form of invasion of privacy "does not depend upon any publicity given to the person whose interest is invaded," but "consists solely of an intentional interference with his interest in solitude or seclusion"). If the Supreme Court of Colorado were to recognize the form of invasion of privacy described in § 652B, I doubt that the court would look to the "confidentiality" of acquired information as a determinant of whether an intrusion is significant.

an unreasonable or offensive intrusion. There is ample room for reasonable minds to differ regarding whether the medications form, required as a condition of employment, intruded upon Mares' solitude or seclusion in a way that "would be highly offensive to a reasonable person." *Restatement (Second) of Torts* § 652B. Once Mares introduced the medications form, she created a genuine issue of material fact. Today, the majority removes the issue from the province of the jury and becomes the ultimate factfinder. Absent any indication from the Supreme Court of Colorado that we should decide this issue as a matter of law, I cannot condone this usurpation of the jury's function.

The parties' arguments on appeal adequately frame the important, unanswered questions of Colorado law presented by this case. Mares contends that an employee who is required, as a condition of employment, to disclose to her employer the nature of her illnesses for which she takes drugs or medications and to authorize the release by her physician of information related to her use of those drugs states a claim for invasion of privacy under Colorado law. As support for her contention, Mares cites to *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970), in which the Supreme Court of Colorado recognized the tort of invasion of privacy in the debtor/creditor context. She contends that she states a claim under the standard set forth in *Rugg* because ConAgra's actions in this case "foreseeably [would] probably result in extreme anguish, embarrassment, humiliation, or mental suffering and injury to a person possessed of ordinary sensibilities, under the same or similar circumstances." *Id.* at 755.

ConAgra, on the other hand, contends that the Supreme Court of Colorado would not extend *Rugg* to the employment context. ConAgra further contends that recognition of the invasion of privacy tort in *Rugg* was based on a creditor's repeated harassment of the debtor in that case. ConAgra argues that, in the present case, Mares has not alleged that she was repeatedly hounded or harassed to fill out the medications form. Mares responds that *re-*

*peated* harassment should not be required in the employment context because an employer, "by wielding the power of the 'pink slip,'" can cause extreme anguish by making a single unreasonable demand and conditioning employment on the fulfillment of that demand.

ConAgra also contends that Mares fails to state a claim for the "intrusion upon seclusion" form of the tort of invasion of privacy described in *Restatement (Second) of Torts* § 652B. ConAgra argues that, even if the Supreme Court of Colorado were to recognize that form of the tort, Mares has failed to allege an intrusion because she refused to consent to the release of private information. *See Tombrello v. USX Corp.*, 763 F.Supp. 541, 545 (N.D.Ala. 1991); *Spencer v. General Tel. Co.*, 551 F.Supp. 896, 899 (M.D.Pa.1982); *Gretencord v. Ford Motor Co.*, 538 F.Supp. 331, 333 (D.Kan.1982); *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1138 (Alaska 1989); *Jennings v. Minco Technology Labs, Inc.*, 765 S.W.2d 497, 502 (Tex. App.1989). However, as Mares points out, other courts have recognized that "highly personal questions or demands by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy." W. Page Keeton, *Prosser & Keeton on Torts* § 117, at 121 (Supp.1988); *Phillips v. Smalley Maintenance Servs., Inc.*, 435 So.2d 705, 709 (Ala.1983) ("acquisition of information from a plaintiff is not a requisite element of a § 652B cause of action"); *see also McSurely v. McClellan*, 753 F.2d 88, 113 (D.C.Cir.1985).

Although the Supreme Court of Colorado has noted that there are four oft-recognized forms of the tort of invasion of privacy, including "intrusion upon physical solitude," *People v. Home Ins. Co.*, 197 Colo. 260, 591 P.2d 1036, 1038 n. 2 (1979), the court has not formally recognized that form of the tort or defined its scope. I conclude that the Supreme Court of Colorado should be afforded an opportunity to decide whether ConAgra has intruded upon Mares' private concerns and, if so, whether a jury should determine whether such an

**500**

intrusion is "highly offensive." Therefore, I would certify the following questions to the Supreme Court of Colorado:

1. Does the law of the State of Colorado recognize the tort of invasion of privacy in the form described in *Restatement (Second) of Torts* § 652B (1977), as set forth below?

 One who intentionally intrudes physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

2. If the answer to Question 1 is "yes," must information about the plaintiff's "private affairs or concerns" actually be acquired through intrusion before the cause of action is established?

3. If the answer to Question 1 is "yes," based on the facts of this case, does Mares state a claim for an "intentional[ ] intru[sion] physical[ ] or otherwise, upon the solitude or seclusion of another or [her] private affairs or concerns"?

4. If the answers to Questions 1 and 3 are "yes," based on the facts of this case, is the alleged "intrusion" sufficiently offensive that a jury should determine whether the intrusion is "highly offensive to a reasonable person"?

In my view, the certification procedure is an appropriate and underutilized mechanism to allow important, purely state law questions to be decided by the highest court of the state involved. Although the federal courts unquestionably retain their jurisdiction, the basic tenets of federalism suggest that the vitality of the system is best served when federal courts give state courts the opportunity to decide issues of importance to state law. Because Mares' claim does not implicate federal statutory or constitutional rights and because the tort of invasion of privacy is based in the states' determination of the rights and remedies to be afforded to its citizens, I favor turning to my colleagues on the Supreme Court of Colorado to exercise those powers reserved to the states.

Because the majority incorrectly shifts the burden of producing summary judgment evidence to Mares and decides—without any indication from the cases of the Supreme Court of Colorado—that the alleged intrusion in this case was insignificant, I dissent.