**Sofia MUNIZ, individually, and as mother and next friend of Izaac Muniz, a minor, Plaintiffs,**

**v.**

**Gary M. GARNER, M.D., Poudre Valley Health Care, Inc., d/b/a Fort Collins Family Medicine Center, d/b/a Family Medicine Center, Defendants.**

**Civil Action No. 95–B–292.**

United States District Court, D. Colorado.

April 10, 1996.

Jeffrey A. Bogue, Victoria J. Koury, Leventhal & Bogue, P.C., Denver, CO, for Plaintiffs.

John O. Martin, Kathleen M. Shea, John O. Martin, P.C., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This medical malpractice action is brought by Sofia Muniz on behalf of herself and as next friend of her son Izaac Muniz for injuries sustained by Izaac from a premature birth. Ms. Muniz was cared for by defendant Gary M. Garner, M.D. (Garner) at the Poudre Valley Hospital (PVH) operated by Poudre Valley Hospital District (PVHD). On May 1, 1994, PVH became Poudre Valley Health Care (PVHC), Inc., d/b/a Fort Collins Family Medicine Center, d/b/a Family Medicine Center, a private institution.

Defendants move for partial summary judgment asserting that the Colorado Governmental Immunity Act (Immunity Act or Act), C.R.S. § 24–10–102, applies to this action. PVHC contends that it is entitled to claim governmental immunity because at the time the injury is alleged to have occurred, its predecessor in interest was a public enti-

ty. Defendants also move to dismiss this action for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) for failure to comply with C.R.S. § 24–10–109.

The motions are fully briefed and heard. I hold that the Immunity Act is applicable to this case. Consequently, I grant the motion for partial summary judgment. For the reasons set forth in this order, I grant the motion to dismiss as to Sofia Muniz but deny it as to Izaac Muniz.

## I.

The following facts are not genuinely disputed. In 1992, Ms. Muniz visited PVH and learned she was four months pregnant. She received her prenatal care at PVH and was frequently seen by Dr. Garner. On February 5, 1993, Ms. Muniz appeared at PVH for a regular prenatal visit. Based on statements made by Ms. Muniz during the examination, Dr. Garner determined she was experiencing Braxton–Hick's contractions. Dr. Garner explained this to Ms. Muniz and sent her home. Later that evening Ms. Muniz presented at PVH after four hours of labor, contractions five minutes apart and fully dilated. Shortly thereafter, Izaac Muniz was delivered by Caesarean section. Plaintiffs claim that because of Dr. Garner's negligent mis-diagnosis, Izaac was born prematurely causing neurologic and respiratory disorders.

At the time Izaac was delivered, PVH was a public entity. Dr. Garner was a physician in training in the PVH family practice residency program. On May 1, 1994, PVH became a private entity to enable it to compete for managed health care contracts and services.

Plaintiffs filed this action on February 3, 1995. Jurisdiction is based on diversity. Defendants raised the defense of governmental immunity in their answer.

## II.

Summary judgment shall enter where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If a movant establishes entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). The operative inquiry is whether, based on all the documents submitted, a reasonable trier of fact could find by a preponderance of evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Mares,* 971 F.2d at 494. Summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

## III.

Defendants contend that the Immunity Act is applicable to this action because the alleged injury occurred at the hands of a public employee working for a public hospital. Plaintiffs, however, argue that defendants are not subject to the Immunity Act because PVHC is now a private entity not entitled to the protections afforded by the Immunity Act. This case presents a matter of first impression regarding the application of the Immunity Act to an action against what is now a private hospital by a plaintiff treated at a public hospital by a public employee when the alleged negligent acts causing injury occurred.

The policy underlying the Immunity Act is set forth in C.R.S. § 24–10–102:

The general assembly also recognizes that the state and its political subdivisions provide essential public services and functions and that unlimited liability could disrupt or make prohibitively expensive the provision of such essential public services and functions. The general assembly further recognizes that the taxpayers would ultimately bear the fiscal burdens of unlimited liability and that limitations on the liability of public entities and public employees are necessary in order to protect the taxpayers against excessive fiscal burdens. * * * It is further recognized that the state, its political subdivisions, and the public em-

ployees of such public entities, by virtue of the services and functions provided, the powers exercised, and the consequences of unlimited liability to the governmental process, should be liable for their actions and those of their agents only to such an extent and subject to such conditions as are provided by this article.

The Immunity Act shields government entities and employees of those entities from suit as provided in the Act. It is undisputed that at the time of the alleged negligence, PVH, now PVHC, was a public hospital and Dr. Garner was a public employee. The question is whether the immunity afforded by the Act applies as of the time of the alleged negligence or as of the time the lawsuit was filed.

■ The Immunity Act is silent as to whether, under the circumstances here, protection is afforded by the Act. Indeed, the facts in this case are sufficiently unique that it is probable the General Assembly never considered them when the Act was passed. Under Colorado law, when a statute is silent it "should be construed to effectuate the General Assembly's intent and the beneficial purpose of the legislative measure." *In the Matter of Estate of Royal*, 826 P.2d 1236, 1238 (Colo.1992).

The purpose of the Immunity Act is to protect the public coffer from unlimited liability arising from tortious conduct of a public entity or the employee of a public entity and provide a level of financial certainty. The Colorado General Assembly through the Immunity Act acknowledges that there are a vast number of public services and functions performed by government entities and their employees which if subject to unlimited liability would make such activities prohibitively expensive and potentially bar their availability through the public sector. C.R.S. § 24–10–102. The certainty sought to be achieved by the Act is indicative of a legislative intent that its benefits attach as of the date of the alleged negligence.

Immunity for tortious acts arising from the operation of public hospitals is partially waived under § 24–10–106(b). Torts arising from the acts of employees of public hospitals are subject to C.R.S. § 24–10–114 which limits liability to $150,000 per person. Thus, the

Colorado General Assembly clearly manifested its intent that public hospitals and their employees would be subject to limited liability under the Immunity Act.

Plaintiffs only claim against PVHC is under the doctrine of respondeat superior. Therefore, PVHC's liability stems solely from the acts of Dr. Garner. On February 3, 1992, Dr. Garner qualified as a public employee under C.R.S. § 24–10–103(4)(b)(I) because he was a health care practitioner employed by a public entity. At that time, PVHC's predecessor was liable for any judgment or settlement obtained against Dr. Garner for any claim arising out of injuries sustained from his act or omission occurring during the performance of his duties and within the scope of his employment. C.R.S. § 24–10–110(b). Such liability was limited to $150,000. C.R.S. § 24–10–114. Plaintiffs now seek to hold both Dr. Garner and PVHC to unlimited liability.

■ Because PVHC's liability is derivative, it can only be held to unlimited liability if Dr. Garner is held to unlimited liability. It would be contrary to the clear purpose of the Immunity Act, and illogical, to hold that a public employee who obtains a position in the private sector after terminating his public employment can be subject to unlimited liability for acts performed while a public employee. It follows that the protections afforded under the Immunity Act attach on the date the negligence is alleged to have occurred. Indeed, plaintiffs conceded at the hearing that Dr. Garner was entitled to limited liability under the Immunity Act based on his status as a public employee when the negligent act occurred. Because PVHC's liability, if any, is purely derivative, it follows that PVHC is also entitled to the protections of the Immunity Act. Accordingly, I hold that the Immunity Act is applicable to PVHC under the facts presented in this case.

Having determined that the Immunity Act applies here, plaintiffs are subject to its jurisdictional notice requirements. Section 24–10–109 provides:

Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employ-

ment shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

Plaintiffs assert that Izaac's injuries stem from negligent conduct occurring on February 3, 1992. Plaintiffs filed their complaint on February 3, 1995. Under the Immunity Act, the notice period is not triggered until the injury is discovered. Plaintiffs assert that since birth Izaac has suffered from respiratory and neurological problems resulting from his premature birth. In their briefs, plaintiffs do not contest that if the Immunity Act applies Ms. Muniz's action is barred for her failure to comply with the 180 notice period. However, they argue that Izaac's claim is not barred because his minority rendered him incapable of discovering his injury and, therefore, the 180 day period was never triggered. I agree.

*Cintron v. City of Colorado,* 886 P.2d 291, 294 (Colo.App.1994) is on point. There, the plaintiff suffered serious and permanent mental injuries at the time of her birth at a public hospital. At the time of the lawsuit, plaintiff was approximately two years old. The issue as framed by the Colorado Court of Appeals was "whether a minor who is of such an age that the child is incapable of appreciating the injury that he or she has sustained is, for purpose of complying with § 24–10–109(1), to be charged with the knowledge of one or both of his or her parents." *Cintron,* 886 P.2d at 294. The court held "that nothing in the law of Colorado imposes upon a parent the responsibility to litigate a minor's personal injury claim. Further, even though a parent may voluntarily undertake to aid the assertion of the child's claim by acting as a next friend, the minor will not, generally, be charged with the parents' negligence."

█ Here, it is undisputed that Izaac was incapable of discovering his injury based on his age and mental capacity. Therefore, I conclude as a matter of law, that the 180 day notice period was never triggered. Izaac has complied with the necessary prerequisites to bringing suit under the Immunity Act and, is therefore, entitled to proceed against PVHC and Dr. Garner.

Accordingly it is ORDERED that:

1) Defendants' motion for partial summary judgement on the application of the Colorado Governmental Immunity Act is GRANTED; and

2) Defendants' motion to dismiss is GRANTED as to plaintiff Sofia Muniz for failure to comply with § 24–10–109 and DENIED as to plaintiff Izaac Muniz because he was incapable of discovering his injury under § 24–10–109.