**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 29 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SAM KEIRSEY and KAY ORNDORF,

  Plaintiff-Counter Defendant-
  Appellant,

v.

DREW DIAMOND, BOBBY BUSBY,
and CHARLES JACKSON,

  Defendants-Appellees,

CAROLYN KUSLER,

  Defendant-Counter Claimant-
  Appellee,

CITY OF TULSA,

  Defendant-Cross Claim
  Defendant-Appellee.

No. 96-5155
(D.C. No. 92-C-345-H)
(N. Dist. Okla.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **EBEL,** and **BRISCOE**.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Tulsa Police Officers Sam Keirsey and Kay Orndorff brought this action under 42 U.S.C. § 1983 against the City of Tulsa, former Tulsa Police Chief Drew Diamond, and Tulsa Police Officers Carolyn Kusler, Charles Jackson, and Bobby Busby. Plaintiffs assert their First Amendment rights were violated when defendants retaliated against them for speaking out about alleged improprieties in the Police Department's operation of the Tulsa Youth Ranch. The district court concluded that the individual defendants were entitled to summary judgment because plaintiffs' allegations were conclusory and nonspecific. The court also entered summary judgment for the City of Tulsa, holding that none of the alleged improper conduct was taken by City policy-makers. Plaintiffs appeal and we affirm.

The events leading up to this suit began when responsibility for the operation of the Youth Ranch was transferred from a uniformed division to Tulsa Police headquarters. Defendant Jackson was responsible for the Ranch before the transfer, and defendant Kusler, who was division commander at headquarters, was responsible after the change. Plaintiff Orndorff was assigned to meet with the outgoing personnel to prepare for a smooth transition. The Ranch had received a federal grant to fund sports programs for underprivileged children, and Plaintiff Keirsey was in charge of overseeing grant operations. Both plaintiffs reported to Defendant Kusler.

During the transition, plaintiffs received information which led them to believe that Ranch funds and equipment had been misappropriated and/or stolen, and that other improper activities had taken place there. Plaintiffs reported their suspicions to Kusler. Meetings were held, a City Councilor began to ask questions about the situation, and ultimately the District Attorney began an investigation. Plaintiffs were directed by the Mayor's office to cooperate with the investigation and they did so, telling the District Attorney's office all they knew and had heard about improprieties that had allegedly taken place at the Ranch.

Plaintiffs brought this suit alleging that as a result of their cooperation and the information they gave during the investigation, defendants subjected them to harassment, intimidation, and retaliation. "It is now axiomatic that a governmental entity cannot condition employment 'on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" Schalk v. Gallemore, 906 F.2d 491, 494 (10th Cir 1990) (quoting Connick v. Myers, 461 U.S. 138, 142 (1983)). By the time the events at issue here took place, we had rejected the position that "only adverse employment decisions, such as termination, suspension, or transfer, in retaliation for constitutionally protected conduct are illegal," holding instead that "[a]ctions short of an actual or constructive employment decision can *in certain circumstances* violate the First Amendment." Morfin v. Albuquerque Pub. Schs., 906 F.2d 1434, 1437 n.3 (10th

Cir. 1990) (emphasis added). We expressly did not delineate a precise standard in Morfin, see id., and we have not had an occasion to do so in subsequent cases. Nonetheless, the cases we cited in Morfin demonstrate that the actions complained of must be sufficiently substantial to present an actual or potential danger that an employee's speech will be chilled. See, e.g., Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir. 1989) (harassment not constitutional violation when so trivial "a person of ordinary firmness would not be deterred" from engaging in protected activity); Allen v. Scribner, 812 F.2d 426, 434 n.17 (9th Cir. 1987) (harassment not constitutional violation when court can say as matter of law that exercise of First Amendment rights not deterred).

When a defendant asserts the defense of qualified immunity, the plaintiff must come forward with evidence of sufficient particularity demonstrating that the defendant's conduct violated clearly established law. Langley v. Adams County, 987 F.2d 1473, 1476 (10th Cir. 1993). "Although we view the evidence and draw all inferences in the light most favorable to the party opposing summary judgment, that party 'must identify sufficient evidence which would require submission of the case to a jury.'" Id. (quoting Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to

-4-

the matters therein." Fed. R. Civ. P. 56(e).

Plaintiffs' failure to comply with the above requirements for opposing a grant of a grant of summary judgment seriously impedes our ability to address their claims on the merits. We have repeatedly cautioned that

> the nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment. Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein. In the absence of such specific reference, we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury. Such an appellate supplementation of the nonmovant's presentation would not be fair to either the movant or the district court.

Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024-25 (10th Cir. 1992) (citations omitted). Moreover, "[i]t is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment. Hearsay testimony cannot be considered because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995) (citations omitted). As we discuss briefly below, plaintiffs here have frequently failed to support their arguments with any record citations whatsoever, and many of the citations they do provide are to hearsay evidence that we will not consider.

We first address plaintiffs' claims against the individual defendants.

Plaintiffs concede that they have never received a cut in pay, or been demoted or suspended. They both nevertheless argue that they were given undesirable transfers and less favorable performance reviews in retaliation for their protected activity. Specifically, Kiersey complains about his reassignment by Chief Palmer to the midnight shift under Major Bob chance and his subsequent lower performance evaluation. Orndorff apparently complains about her transfer by Chief Dave Bean and her June 1, 1993 evaluation by Lieutenant Jim Green. Significantly, however, the persons responsible for the transfers and the reviews are not named defendants in this lawsuit. Plaintiffs have offered nothing but hearsay and speculation to establish the retaliatory nature of these actions or to tie them to defendants. Accordingly, these claims do not defeat the grant of summary judgment.

Plaintiffs also assert the following laundry list of incidents which they contend constitute actionable harassment under Morfin.

1. Kusler filed a sexual harassment complaint against Keirsey;
2. Kusler altered a tape recording regarding a meeting with Keirsey and Orndorff;
3. Charles Jackson attempted to have Keirsey and Orndorff lie to [a city councilman] at a meeting;
4. Kusler made demands on Keirsey and Orndorff that had never been made before (i.e. reporting everything to her);
5. Diamond directed Plaintiff Orndorff to forget all that happened;
6. Diamond, Busby and Kusler intimidated Keirsey and Orndorff in regard to giving information to the Tulsa County

-6-

District Attorney's Office;

7. Mayor Pro Temp Susan Savage tried to dissuade Keirsey's and Orndorff's meeting with [the city councilman];

8. Busby made threats against Keirsey and Orndorff;

9. Diamond attempted to transfer Keirsey and Orndorff;

10. Diamond threatened that Keirsey and Orndorff would be "dealt with;"

11. Kusler lied to the Tulsa World [newspaper] regarding Keirsey;

12. Plaintiffs' lowered performance evaluations.

Aplts. App. at 72.[1]

Many of the above items cannot be characterized as harassment, many are unsupported, and others are supported by nothing more than hearsay. Indeed, the list as it appears in district court pleadings is unaccompanied by any citations to the record whatsoever. Moreover, even if the allegations were properly accompanied by admissible evidence, it is undisputed that the conduct did not chill the exercise of plaintiffs' speech. See DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 191 (7th Cir. 1995) ("the complained-of action must be sufficiently adverse to present an actual or potential danger that the speech of employees will be chilled"). Accordingly, in view of our discussion in Morfin indicating that harassment alone does not rise to a constitutional violation unless it presents a

---

[1] As to item number one, the record reflects that Officer Kusler filed her complaint against another officer, not plaintiff Keirsey. Her complaint against Keirsey was that he did not properly process the complaint, which others with authority determined was not actionable. As to item number eight, plaintiffs conceded in district court that they had no evidence to support the allegation.

substantial danger of chilling protected speech, individual defendants were entitled to summary judgment.

Plaintiffs also sued the City of Tulsa, asserting that it is liable for the unconstitutional acts of former Police Chief Diamond. Having failed to establish their claim against defendant Diamond individually through admissible evidence, plaintiffs claim against the City based on the same conduct fails as well. See Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).

Moreover, we agree with the district court that the City is not liable because the Police Chief is not the final policy-maker for the City. The Tulsa Municipal Ordinances provide that the Police Department "shall be under the control and authority of the Mayor who shall approve rules and regulations defining the authority, specifying the duties, and governing the conduct of all police officers and employees of the Department." Tulsa, Okla., Municipal Ordinances tit. 29, sec. 101. The Ordinances further provide that the Chief is accountable to the Mayor for the promulgation of all orders given to the Department, and requires the Chief to confer with and be advised by the Mayor on all important matters pertaining to the Department. Id. sec. 106.[2] This case is

---

[2] In addition to relying on the conduct of former Chief Diamond to support their claim against the City, plaintiffs also assert that the City is liable on the basis of Mayor Pro Tem Susan Savage's alleged attempt to dissuade them from meeting with the city councilman. This alleged conduct cannot be characterized as harassment, is unsupported by any citation to admissible evidence, and is too

thus distinguishable from <u>Flanagan v. Munger</u>, 890 F.2d 1557 (10th Cir. 1989), upon which plaintiffs rely, because there the City conceded that the Chief had final authority to take the actions complained of and the pertinent municipal code in fact vested final authority in the Chief.  <u>Id.</u> at 1568.

 We **AFFIRM** the grant of summary judgment against all defendants.

ENTERED FOR THE COURT

Stephanie K. Seymour
Chief Judge

---

trivial to rise to a constitutional violation in any event.